# In the United States Court of Federal Claims
### OFFICE OF SPECIAL MASTERS
### No. 17-917V

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

RICHARD K. PARKER,

        Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

        Respondent.

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

Special Master Jennifer A. Shah

Filed: May 19, 2025

*Ramon Rodriguez, III*, Siri & Glimstad LLP, Richmond, VA, for Petitioner.
*Sarah Christina Duncan*, U.S. Department of Justice, Washington, DC, for Respondent.

## DECISION AWARDING INTERIM ATTORNEYS' FEES AND COSTS[1]

On July 7, 2017, Richard K. Parker ("Petitioner") filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act" or "Program"), alleging that he developed Parsonage-Turner syndrome ("PTS") caused by a pneumococcal 13-valent conjugate ("Prevnar 13") vaccination he received November 21, 2014. ECF No. 1 ("Pet.") at 1-2.

On March 19, 2018, Respondent filed his Rule 4(c) Report, contending that entitlement to compensation should be denied. ECF No. 18. Thereafter, the parties submitted expert reports and

---

[1] Because this Decision contains a reasoned explanation for the action in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all "§" references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

1

medical literature. On May 1, 2019, Petitioner filed an application for interim attorneys' fees and costs, seeking $8,445.00 in fees and $494.85 in costs for work performed from January 27, 2016, through July 12, 2017. ECF No. 36 at 10, 14. On June 19, 2019, former Special Master Katherine E. Oler granted Petitioner's application in part, awarding $8,254.65. ECF No. 46.

The parties filed additional expert reports, literature, and other evidence. On April 11-12, 2023, an entitlement hearing was held at which Petitioner, his wife, and five experts testified. Petitioner filed additional literature after the hearing, and the parties filed post-hearing briefs.

Petitioner filed a second motion for interim attorneys' fees and costs on November 13, 2024, requesting a total of $197,541.14, comprised of $152,186.90 in attorneys' fees and $45,354.24 in attorneys' costs. ECF No. 113 ("Fees App.") at 10-11. Respondent filed a response on November 22, 2024, deferring to me as to whether Petitioner has met the legal standard for an award of interim attorneys' fees and costs. ECF No. 115 ("Fees Resp.") at 2. Petitioner filed a reply on December 2, 2024. ECF No. 116 ("Reply").

I hereby **GRANT IN PART** Petitioner's application and award a total of **$176,991.14** in interim attorneys' fees and costs.

## I.   Legal Standard

### A.  Interim Attorneys' Fees and Costs

The Federal Circuit has held that an award of interim attorneys' fees and costs is permissible under the Vaccine Act. *Shaw v. Sec'y of Health & Hum. Servs.*, 609 F.3d 1372 (Fed. Cir. 2010); *Avera v. Sec'y of Health & Hum. Servs.*, 515 F.3d 1343 (Fed. Cir. 2008). In *Cloer*, the Federal Circuit noted that "Congress [has] made clear that denying interim attorneys' fees under the Vaccine Act is contrary to an underlying purpose of the Vaccine Act." *Cloer v. Sec'y of Health & Hum. Servs.*, 675 F.3d 1358, 1361-62 (Fed. Cir. 2012).

In *Avera,* the Federal Circuit stated that "[i]nterim fees are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352. Likewise, in *Shaw,* the Federal Circuit held that "where the claimant establishes that the cost of litigation has imposed an undue hardship and there exists a good faith basis for the claim, it is proper for the special master to award interim attorneys' fees." 609 F.3d at 1375. *Avera* did not, however, define when interim fees are appropriate; rather, it has been interpreted to allow special masters discretion. *See Avera*, 515 F.3d at 1352; *Kirk v. Sec'y of Health & Hum. Servs.*, No. 08-241V, 2009 WL 775396, at *2 (Fed. Cl. Spec. Mstr. Mar. 13, 2009); *Bear v. Sec'y of Health & Hum. Servs.*, No. 11-362V, 2013 WL 691963, at *4 (Fed. Cl. Spec. Mstr. Feb. 4, 2013). Special masters have viewed the three *Avera* criteria -- protracted proceedings, costly expert testimony, and undue hardship -- as factors to consider in a flexible balancing test. *Avera*, 515 F.3d at 1352; *see Al-Uffi v. Sec'y of Health & Hum. Servs.*, No. 13-956V, 2015 WL 6181669, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2015).

The undue hardship inquiry looks at more than just financial involvement of a petitioner; it also looks at any money expended by a petitioner's counsel. *Kirk*, 2009 WL 775396, at *2. Referring to *Avera*, former Chief Special Master Golkiewicz in *Kirk* found that "the general

principle underlying an award of interim fees [is] clear: avoid working a substantial financial hardship on petitioners and their counsel." *Id*.

   B. Good Faith

A petitioner is eligible for an interim award of reasonable attorneys' fees and costs only if the special master finds that the petition was brought in good faith and with a reasonable basis. §15(e)(1); *Avera*, 515 F.3d at 1352; *Shaw*, 609 F.3d at 1372; *Woods v. Sec'y of Health & Hum. Servs*, 105 Fed. Cl. 148, 154 (2012); *Friedman v. Sec'y of Health & Hum. Servs.*, 94 Fed. Cl. 323, 334 (2010); *Doe 21 v. Sec'y of Health & Hum. Servs.*, 89 Fed. Cl. 661, 668 (2009); *Bear*, 2013 WL 691963, at *5; *Lumsden v. Sec'y of Health & Hum. Servs.*, No. 97-588V, 2012 WL 1450520, at *4 (Fed. Cl. Spec. Mstr. Mar. 28, 2012). The good faith requirement is met through a subjective inquiry. *Di Roma v. Sec'y of Health & Hum. Servs.*, No. 90-3277V, 1993 WL 496981, at *1 (Fed. Cl. Spec. Mstr. Nov. 18, 1993). It "focuses upon whether [P]etitioner honestly believed he had a legitimate claim for compensation." *Turner v. Sec'y of Health & Hum. Servs.*, No. 99-544V, 2007 WL 4410030, at *5 (Fed. Cl. Spec. Mstr. Nov. 30, 2007). Without evidence of bad faith, "petitioners are entitled to a presumption of good faith." *Grice v. Sec'y of Health & Hum. Servs.*, 36 Fed. Cl. 114, 121 (1996). Thus, so long as Petitioner had an honest belief that his claim could succeed, the good faith requirement is satisfied. *See Riley v. Sec'y of Health & Hum. Servs.*, No. 09-276V, 2011 WL 2036976, at *2 (Fed. Cl. Spec. Mstr. Apr. 29, 2011) (citing *Di Roma*, 1993 WL 496981, at *1); *Turner*, 2007 WL 4410030, at *5.

   C. Reasonable Basis

Unlike the good faith inquiry, an analysis of reasonable basis requires more than just a petitioner's belief in his claim. *Turner*, 2007 WL 4410030, at *6-7. Instead, the claim must be supported by objective evidence -- medical records or medical opinion. *Sharp-Roundtree v. Sec'y of Health & Hum. Servs.*, No. 14-804V, 2015 WL 12600336, at *3 (Fed. Cl. Spec. Mstr. Nov. 3, 2015).

Although the statute does not define the quantum of proof needed to establish reasonable basis, it is "something less than the preponderant evidence ultimately required to prevail on one's vaccine-injury claim." *Chuisano v. United States,* 116 Fed. Cl. 276, 283 (2014). The Court of Federal Claims affirmed in *Chuisano* that "[a]t the most basic level, a petitioner who submits no evidence would not be found to have reasonable basis. . ." *Id.* at 286. The Court in *Chuisano* found that a petition that relies on temporal proximity and a petitioner's affidavit is not sufficient to establish reasonable basis. *Id.* at 290; *see also Turpin v. Sec'y Health & Hum. Servs.*, No. 99-564V, 2005 WL 1026714, *2 (Fed. Cl. Spec. Mstr. Feb. 10, 2005) (finding no reasonable basis when petitioner submitted an affidavit and no other records); *Brown v. Sec'y Health & Hum. Servs.*, No. 99-539V, 2005 WL 1026713, *2 (Fed. Cl. Spec. Mstr. Mar. 11, 2005) (finding no reasonable basis when petitioner presented only e-mails between her and her attorney). The Federal Circuit has affirmed that "more than a mere scintilla but less than a preponderance of proof could provide sufficient grounds for a special master to find reasonable basis." *Cottingham v. Sec'y of Health & Hum. Servs.*, No. 2019-1596, 971 F.3d 1337, 1346 (Fed. Cir. 2020) (finding Petitioner submitted objective evidence supporting causation when she submitted medical records and a vaccine package insert); *see also James-Cornelius v. Sec'y of Health & Hum. Servs.*, 984

3

F.3d 1374, 1380 (Fed. Cir. 2021) (finding that "the lack of an express medical opinion on causation did not by itself negate the claim's reasonable basis").

"[I]n deciding reasonable basis the [s]pecial [m]aster needs to focus on the requirements for a petition under the Vaccine Act to determine if the elements have been asserted with sufficient evidence to make a feasible claim for recovery." *Santacroce v. Sec'y of Health & Hum. Servs.*, No. 15-555V, 2018 WL 405121, at *7 (Fed. Cl. Jan. 5, 2018). Special masters cannot award compensation "based on the claims of petitioner alone, unsubstantiated by medical records or by medical opinion." 42 U.S.C. § 300aa-13(a)(1). Special masters and judges of the Court of Federal Claims have interpreted this provision to mean that petitioners must submit medical records or expert medical opinion in support of causation-in-fact claims. *See Waterman v. Sec'y of Health & Hum. Servs.,* 123 Fed. Cl. 564, 574 (2015) (citing *Dickerson v. Sec'y of Health & Hum. Servs.*, 35 Fed. Cl. 593, 599 (1996) (stating that medical opinion evidence is required to support an on-Table theory where medical records fail to establish a Table injury)).

When determining if a reasonable basis exists, a special master may consider a myriad of factors, including "the factual basis of the claim, the medical and scientific support for the claim, the novelty of the vaccine, and the novelty of the theory of causation." *Amankwaa*, 138 Fed. Cl. at 289. This approach allows the special master to look at each application for attorneys' fees and costs on a case-by-case basis. *Hamrick v. Sec'y of Health & Hum. Servs.*, No. 99-683V, 2007 WL 4793152, at *4 (Fed. Cl. Spec. Mstr. Nov. 19, 2007).

## II. Discussion

### A. Undue Financial Hardship

The Federal Circuit has noted that interim fees "are particularly appropriate in cases where proceedings are protracted, and costly experts must be retained." *Avera*, 515 F.3d at 1352 (Fed. Cir. 2008). Petitioner's counsel has worked on this case since 2017 and was last awarded interim fees and costs on June 19, 2019. Fees App. at 1, 3. Counsel has retained experts and filed four expert reports, submitted pre-hearing briefing, participated in an entitlement hearing, and submitted post-hearing briefing. *See* ECF Nos. 26, 41, 57, 59, 79, 106, 109. Although successive awards of interim fees and costs are generally disfavored, under these circumstances I find that Petitioner would suffer undue hardship without such an award.

### B. Good Faith and Reasonable Basis

Respondent has not raised any specific objection to Petitioner's good faith or reasonable basis for this claim, and he leaves the determination to my discretion. Fees Resp. at 2. I find that the petition was filed in good faith.

As discussed above, the threshold for reasonable basis is much lower than the burden to prove entitlement to compensation, which requires preponderant evidence. Petitioner filed extensive medical records and multiple expert reports, and this case proceeded to an entitlement hearing. I find that Petitioner has maintained a reasonable basis for his claim.

4

As there is no other reason to deny an award of interim attorneys' fees and costs, I will award Petitioner's reasonable fees and costs as described below.

### C. Attorneys' Fees

Petitioner requests a total of $152,186.90 in attorneys' fees for Sands Anderson PC ("Sands Anderson"). Fees App. at 10; Reply at 3. Petitioner bears the burden of establishing that the rates charged, hours expended, and costs incurred are reasonable. *Wasson v. Sec'y of Health & Hum. Servs.*, 24 Cl. Ct. 482, 484 (1993).

1. Reasonable Hourly Rate

A reasonable hourly rate is defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Avera*, 515 F.3d at 1348 (quoting *Blum*, 465 U.S. at 896 n.11). In general, this rate is based on "the forum rate for the District of Columbia" rather than "the rate in the geographic area of the practice of [P]etitioner's attorney." *Rodriguez v. Sec'y of Health & Hum. Servs.*, 632 F.3d 1381, 1384 (Fed. Cir. 2011) (citing *Avera*, 515 F. 3d at 1349).

*McCulloch* provides the framework for determining the appropriate compensation for attorneys' fees based upon the attorneys' experience. *See McCulloch v. Sec'y of Health & Hum. Servs.*, No. 09–293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). The Office of Special Masters has accepted the decision in *McCulloch* and has issued a Fee Schedule for subsequent years.[3]

Petitioner requests compensation for his counsel, Mr. Ramon Rodriguez, III, at the following hourly rates: $383.00 per hour for work performed in 2017; $394.00 per hour for work performed in 2018; $405.00 per hour for work performed in 2019; $422.00 per hour for work performed in the first half of 2020; $444.00 per hour for work performed in 2021; $458.00 per hour for work performed in 2022; and $482.00 per hour for work performed in 2023. Fees App. at 10. Petitioner also requests compensation for Mr. Rodriguez's paralegals at the following hourly rates: $149.00 per hour for work performed in 2018; $151.00 per hour for work performed in 2019; $158.00 per hour for work performed in 2020; $166.00 per hour for work performed in 2021; $177.00 per hour for work performed in 2022; and $186.00 per hour for work performed in 2023. *Id.* Lastly, Petitioner requests compensation for Ms. Elizabeth Muldowney, counsel, at a rate of $372.00 per hour for work performed in 2019. *Id.*

Mr. Rodriguez's requested rates are consistent with what he has previously been awarded and are in accordance with the Office of Special Masters' Fee Schedule. *See Canady v. Sec'y of Health & Hum. Servs.*, No. 18-1624V, 2025 WL 863084, at *4 (Fed. Cl. Spec. Mstr. Feb. 21, 2025); *see also Roy v. Sec'y of Health & Hum. Servs.*, No. 17-323, 2022 WL 2449753, at *2 (Fed. Cl. Spec. Mstr. June 9, 2022). Accordingly, I find Mr. Rodriguez's requested rates are reasonable

---

[3] The Office of Special Masters Attorneys' Forum Hourly Rate Fee Schedule for 2015 through 2025 can be accessed at: https://www.uscfc.uscourts.gov/osm-attorneys-forum-hourly-rate-fee-schedules. The hourly rates contained within the schedules are updated based on the decision in *McCulloch*, 2015 WL 5634323.

and that no adjustment is warranted. Additionally, I find the requested paralegal rates are reasonable, based on the Office of Special Masters' Fee Schedule and what Mr. Rodriguez's staff has previously been awarded. *See Roy*, 2022 WL 2449753, at *2.

Similarly, Ms. Muldowney's requested rates are consistent with what she has previously been awarded and are in accordance with the Office of Special Masters' Fee Schedule. *See McCarthy v. Sec'y of Health & Hum. Servs.*, No. 18-1826V, 2025 WL 863501, at *3 (Fed. Cl. Spec. Mstr. Feb. 21, 2025); *see also Eloyan v. Sec'y of Health & Hum. Servs.*, No. 18-1450V, 2024 WL 3913710, at *4 (Fed. Cl. Spec. Mstr. July 8, 2024). Accordingly, I find Ms. Muldowney's requested rates are reasonable and that no adjustment is warranted.

   2. Hours Reasonably Expended

Attorneys' fees are awarded for the "number of hours reasonably expended on the litigation." *Avera*, 515 F.3d at 1348. Ultimately, it is "well within the Special Master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." *Saxton ex rel. Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1522 (Fed. Cir. 1993). In exercising that discretion, special masters may reduce the number of hours submitted by a percentage of the amount charged. *See Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 728-29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Hum. Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction of attorney and paralegal hours). Further, special masters may reduce awards *sua sponte*, independent of enumerated objections from the respondent. *Sabella v. Sec'y of Health & Hum. Servs.*, 86 Fed. Cl. 201, 208-09 (Fed. Cl. 2009); *Savin v. Sec'y of Health & Hum. Servs.*, 85 Fed. Cl. 313, 318 (Fed. Cl. 2008), *aff'd*, No. 99-573V, 2008 WL 2066611 (Fed. Cl. Spec. Mstr. Apr. 22, 2008).

A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. *Broekelschen v. Sec'y of Health & Hum. Servs.*, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011). Special masters may look to their experience and judgment to reduce an award of fees and costs to a level they find reasonable for the work performed. *Saxton v. Sec'y of Health & Hum. Servs.*, 3 F.3d 1517, 1521 (Fed. Cir. 1993). It is within a special master's discretion to instead make a global reduction to the total amount of fees requested. *See Hines v. Sec'y of Health & Hum. Servs.*, 22 Cl. Ct. 750, 753 (1991) ("special masters have wide latitude in determining the reasonableness of both attorneys' fees and costs"); *Hocraffer v. Sec'y of Health & Hum. Servs.*, No. 99-533V, 2011 WL 3705153 (Fed. Cl. Spec. Mstr. July 25, 2011), *mot. for rev. denied*, 2011 WL 6292218, at *13 (Fed. Cl. 2011) (denying review of the special master's decision and endorsing "a global – rather than line-by-line – approach to determine the reasonable number of hours expended in this case").

While attorneys may be compensated for non-attorney-level work, the rate must be comparable to what would be paid for a paralegal or secretary. *See O'Neill v. Sec'y of Health & Hum. Servs.*, No. 08–243V, 2015 WL 2399211, at *9 (Fed. Cl. Spec. Mstr. Apr. 28, 2015). Clerical and secretarial tasks should not be billed at all, regardless of who performs them. *See*, *e.g.*, *McCulloch*, 2015 WL 5634323, at *26. It is well-established that billing for administrative and clerical tasks is not permitted in the Vaccine Program. *Rochester v. United States*, 18 Cl. Ct. 379, 387 (1989).

The overall hours spent on this matter appear to be largely reasonable; however, a minor reduction is necessary. Several entries in the submitted billing records are for clerical or administrative tasks; specifically, for filing documents. *See* Fees App., Ex. 79. Examples include (but are not limited to):

- September 20, 2018: 0.7 hours billed by Mr. Rodriguez to "Draft, proof, format, *and file unopposed motion for extension of time to file expert report*";

- June 26, 2020: 0.1 hours billed by Mr. Rodriguez to "*file status report*"; and

- June 27, 2023: 1.0 hours billed by Mr. Rodriguez to "draft, proof, format, *and file petitioner's unopposed motion for extension of time to file reply*".

*Id.* (emphasis added). Counsel billed approximately 8.2 hours for these tasks, resulting in charges of $3,552.00. Because these tasks were performed over six years by Mr. Rodriguez, billed at different hourly rates, and included in billings for non-clerical and administrative tasks, I will apply a flat $500.00 deduction from the requested attorneys' fees for these charges.

Accordingly, Petitioner is awarded attorneys' fees in the amount of **$151,686.90**.

**D. Reasonable Costs**

Petitioner requests a total of $45,354.24 for attorneys' costs, consisting of $238.28 for medical records requests; $0.50 for postage; $23.31 for mailing costs; $1,020.25 for copying expenses; $74.90 for meals during the entitlement hearing; $1,197.00 for the hearing transcript; $3,000.00 for Dr. Steinman's retainer fee; and $39,800.00 for Dr. Carr's expert report and hearing testimony. Fees App., Ex. 78 at 2-3; Ex. 79 at 29-30.

Petitioner provided documentation for the costs associated with the medical record requests, mailing costs, meals, and transcript. Fees App., Ex. 78 at 5, 8-16, 18, 20. I find the costs for these items to be reasonable and award them in full. Petitioner did not provide documentation for postage and the copying expenses; however, because these costs are normal business expenses and not unreasonable, I award them in full. I discuss the remaining costs below.

1. Petitioner's Expert Costs for Lawrence Steinman, M.D.

Petitioner requests $3,000.00 for Dr. Steinman's retainer fee "for the first six hours of work" at a rate of $500.00 per hour. Fee App., Ex. 78 at 2, 4. Dr. Steinman has been awarded his requested hourly rate by other special masters, and I see no reason to disturb his request. *See Morrison v. Sec'y of Health & Hum. Servs.*, No. 18-386V, 2023 WL 1873254, at *7 (Fed. Cl. Spec. Mstr. Feb. 10, 2023); *Marcum v. Sec'y of Health & Hum. Servs.*, No. 20-65V, 2023 WL 2756218, at *7 (Fed. Cl. Spec. Mstr. Apr. 3, 2023); *Noorani v. Sec'y of Health & Hum. Servs.*, No. 16-970V, 2022 WL 780828, at *6 (Fed. Cl. Spec. Mstr. Jan. 20, 2022). Although Petitioner has not provided documentation for the number of hours expended by Dr. Steinman, considering the work completed I find Dr. Steinman's retainer fee to be reasonable, and I will award it in full. Accordingly,

7

Petitioner is awarded $3,000.00 for Dr. Steinman's retainer fee.

###    2. Petitioner's Expert Costs for Daniel Carr, M.D.

Petitioner requests $39,800.00 for work performed by Dr. Carr. Fees App., 78 at 2-3. Dr. Carr billed 39.5 hours using various rates: for attorney communications, Dr. Carr charged $300.00 for the first 15 minutes of each communication and $150.00 for each subsequent 15 minutes; for reviewing documents and preparing his expert report, Dr. Carr charged $500.00 per hour; and for attending and testifying at Petitioner's entitlement hearing, Dr. Carr charged $3500.00 for the first hour of each day of the hearing and $1500.00 per hour for each subsequent hour. *Id*. at 6-7, 19-20.

Regarding Petitioner's requested rates for Dr. Carr's work, Respondent argued that "[t]o the extent petitioner is requesting higher expert hourly rates than what has typically been awarded in the past . . . the Court should reserve the highest rates for the most qualified experts opining on the most complex medical issues." Fees Resp. at 4. Respondent noted that Dr. Carr "billed $23,500.00 for a two-day entitlement hearing lasting thirteen total hours (effectively charging more than $1,800.00 per hour on average)" and that he also "billed $750.00 for an hour-long phone call." *Id*. Respondent "urge[d] that the hourly rates paid to experts who appear on behalf of respondent ($375.00) be considered when determining an appropriate hourly rate" for Dr. Carr. *Id*. at 5. In his reply, Petitioner argued that both of his "experts provided multiple expert reports and testified at trial demonstrating the extent of their work." Reply at 2. Petitioner also noted that "[t]he Court has found the charges for expert work done by Dr. Steinman and Dr. Carr to be reasonable in other matters." *Id*. (citing *Morrison v. Sec'y of Health & Hum. Servs.*, No. 18-386V, 2023 WL 1873254 (Fed. Cl. Spec. Mstr. Feb. 10, 2023); *Marcum v. Sec'y of Health & Hum. Servs.*, No. 20-65V, 2023 WL 2756218 (Fed. Cl. Spec. Mstr. Apr. 3, 2023); *Thompson v. Sec'y of Health & Hum. Servs.*, No. 19-887V, 2022 WL 17819489 (Fed. Cl. Spec. Mstr. Nov. 8, 2022)).

Dr. Carr has previously been awarded hourly rates of $400.00 and $500.00 per hour for work performed in the Vaccine Program. *See O'Brien v. Sec'y of Health & Hum. Servs.*, No. 18-1492, 2021 WL 1733524, at *3 (Fed. Cl. Spec. Mstr. Mar. 22, 2021); *Ellingsen v. Sec'y of Health & Hum. Servs.*, No. 18-421V, 2021 WL 1093939, at *2 (Fed. Cl. Spec. Mstr. Feb. 11, 2021). I find Dr. Carr's $500.00 per hour rate to be reasonable for the work performed in this instant case; however, Dr. Carr's variable rates for attorney communications and attending the entitlement hearing are excessive. *See Ellingsen*, 2021 WL 1093939, at *2 (finding that Dr. Carr's "inconsistent billing system" was excessive). By charging $300.00 for the first 15 minutes of attorney communications and $150.00 per each subsequent 15 minutes, Dr. Carr effectively charged $750.00 per hour for attorney communications; 1.5 times his rate for reviewing the record and preparing his expert report. Similarly, by charging $3500.00 for the first hour of each day of Petitioner's entitlement hearing and $1500.00 per hour for each subsequent hour, Dr. Carr effectively charged $1,807.69 per hour to participate in the hearing. Petitioner has provided no explanation justifying Dr. Carr's increased rates for attorney communications and for attending the entitlement hearing; as such, I find these rates to be excessive and unreasonable.

Accordingly, Dr. Carr will be compensated at his $500.00 hourly rate for the 39.5 hours he expended in this case, resulting in a reduction of $20,050.00 from the amount sought. Petitioner

is awarded $19,750.00 for Dr. Carr's work in this case.[4]

I award Petitioner a total of **$25,304.24** in attorneys' costs.[5]

### III. Conclusion

Accordingly, in the exercise of the discretion afforded to me in determining the propriety of interim attorneys' fee and cost awards, and based on the foregoing, I **GRANT IN PART** Petitioner's application. Petitioner is awarded interim attorneys' fees and costs in the total amount of **$176,991.14** as follows:

- A lump sum in the amount of **$176,991.14**, representing reimbursement of Petitioner's interim attorneys' fees and costs, to be paid through an ACH deposit to Petitioner's counsel's IOLTA account for prompt disbursement.

In the absence of a motion for review filed pursuant to RCFC Appendix B, the Clerk of Court **SHALL ENTER JUDGMENT** in accordance with this decision.[6]

**IT IS SO ORDERED.**

**s/ Jennifer A. Shah**
Jennifer A. Shah
Special Master

---

[4] Dr. Carr's $500.00 hourly rate multiplied by the 39.5 hours he expended in this case equals $19,750.00. ($500.00 x 39.5 hours = $19,750.00). The $39,800.00 requested for Dr. Carr's work minus the $19,750.00 awarded for Dr. Carr's work equals a $20,050.00 reduction. ($39,800.00 - $19,750.00 = $20,050.00).

[5] Petitioner is awarded $238.28 for medical records requests; $0.50 for postage; $23.31 for mailing costs; $1,020.25 for copying expenses; $74.90 for meals during the entitlement hearing; $1,197.00 for the hearing transcript; $3,000.00 for Dr. Steinman's retainer fee; and $19,750.00 for Dr. Carr's work; totaling $25,304.24.

[6] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment by filing a joint notice renouncing their right to seek review.